ARTHUR N. VOTOLATO *vs.* RHODE ISLAND SUPPLY COMPANY, INC., *et al.*

FEBRUARY 9, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a bill in equity brought under the provisions of general laws 1938, chapter 450, by an attorney at law to establish and enforce an alleged attorney's lien against the respondents. In the superior court a decree was entered denying and dismissing the bill, and the complainant has duly prosecuted his appeal to this court.

The complainant's suit is based on certain services performed by him pursuant to an alleged relationship of attorney and client which he claims existed between himself and the widow of Joseph H. Fortin, who was fatally injured on May 13, 1938 in the course of his employment by the respondent Rhode Island Supply Company, Inc. The other respondent, the Eagle Indemnity Company, insured the

first-named respondent against liability arising from such an injury.

The only services rendered by the complainant consisted of steps taken by him to assist in obtaining from the Eagle Indemnity Company, under the provisions of the workmen's compensation act, the sum of $300 for funeral expenses, and also weekly compensation payments for Mrs. Fortin and her minor children. As it is our opinion that the instant suit can properly be determined on its facts, we will assume, without deciding, that a proceeding such as this one may be maintained in respect to a claim or cause of action arising under the provisions of the workmen's compensation act of this state.

It appears from the evidence that on May 17, 1938 the complainant was introduced by a friend of his to the deceased's widow at her home while she was ill in bed. She had not sent for the complainant and had not previously known him. He contends, in substance, that as a result of this meeting he became Mrs. Fortin's attorney for all matters in respect to her rights and those of her minor children under the workmen's compensation act growing out of the death of her husband. On the other hand, the respondents, with some justification, contend that, because of certain correspondence and certain matters which took place in the two or three days immediately following May 17, the complainant was in fact not the duly appointed attorney of Mrs. Fortin and her children, as he claims.

However, the evidence does show that, in respect to enforcing her rights under the workmen's compensation act, he performed certain legal services, the benefit of which she accepted. These services in general were some investigation of the manner of her husband's death, interviews with a representative of the respondent insurance company, the reaching of a preliminary agreement as to weekly compensation under the act, having such preliminary agreement executed by her and approved by the director of labor, and the delivery to her of two checks from the said insurance

company, one on account of the undertaker's bill, and the other for the first four weeks of compensation. These services were of a more or less formal nature and were completed about June 9, 1938. Immediately after that date the complainant notified the insurance company to send future weekly compensation payments directly to Mrs. Fortin. This was done, and he did not see her again thereafter. Apparently he called upon her in all approximately four times.

We will assume, for the purposes of this cause, that as far as the rendering of the above services was concerned the relationship of attorney and client existed between the complainant and Mrs. Fortin. For performing such services he submitted no bill and has not yet been paid. He contends that when he last saw Mrs. Fortin and delivered to her the above-mentioned checks the following continuation of an earlier conversation with reference to his being paid was had: " . . . I said that after she had received her compensation for six months, under the law she would be entitled to file a petition for a lump sum. I would handle the matter for her. She would get a substantial amount at the time, and we agreed if and when she was ready to file that petition, I would handle the matter for her, and she would pay me." The complainant also testified with reference to that occasion as follows: "Q. Did you tell her you would get a lump sum settlement? A. I did not guarantee a lump sum settlement. I told her that was discretionary with the Court. Q. What did you say she said to that? A. She told me she would let me know when she was ready for a lump sum. Q. Did you see her after that? A. I did not."

Mrs. Fortin did not testify. Her eldest child, a daughter, who was seventeen years of age at the time of her father's death in 1938, and who was of age and married at the time the instant cause was tried in the superior court, testified that she was present and heard the conversation when the complainant took up with her mother the matter of a lump

sum settlement, and in answer to questions from the trial justice gave the following testimony: "The Court: As I understand it, he said something about a lump sum settlement, to your mother? The Witness: Yes sir. The Court: What did your mother say in answer? The Witness: At the time she didn't want the lump sum. She wanted to have it by the week. The Court: Can you give me her exact language, as nearly as you can? The Witness: I should think the way she said it . . . The Court: She didn't want a lump sum? The Witness: Not at the time."

It should be noted that commutation proceedings may be instituted only at the discretion of either party. In any event, they cannot be begun until six months after the compensation agreement is entered into. When brought they are started by a new petition entirely independent of the original compensation proceeding, and the granting of that petition rests in the sound discretion of the superior court. The evidence shows that about three and one-half years after the above conversation took place, namely, in January 1942, Mrs. Fortin and her eldest daughter, without solicitation, consulted the respondent insurance company in order to ascertain if commutation of future compensation could then be had, so that they might purchase a business conducted in a certain store.

Eventually commutation proceedings were instituted in the superior court, Mrs. Fortin and her said daughter appearing for themselves and the minor children by a guardian *ad litem*. After a hearing a justice of that court granted the petition for commutation of future weekly payments to the sum of $1800. This amount was paid to Mrs. Fortin by the insurance company. The complainant performed no services whatever in connection with these proceedings. On January 14, 1942 he first learned of them from a newspaper article. The instant suit was begun some months later.

In a letter written by the complainant to Mrs. Fortin under date of January 16, 1942, after learning of the commutation proceedings, he asked her to pay him for the ser-

vices which he had rendered. In that letter he used in part the following language: "I noticed that yesterday's paper, that you have settled for a lump sum of Eighteen Hundred ($1800) Dollars for balance due in this matter and I feel that you are now in a position to pay me for my services."

Chapter 450, providing for an attorney's lien, is based on the actual existence of the relationship of attorney and client as a prerequisite to the attaching of the statutory lien therein created. Whether or not such a lien attaches in any given case depends largely upon the particular facts and circumstances thereof. In the instant cause the trial justice found from an examination of all the evidence that it showed that the complainant was not actually retained in June 1938 by Mrs. Fortin to institute commutation proceedings; that it failed to establish the existence of any relationship of attorney and client in respect to such proceedings; but that at best it showed merely a promise on the part of Mrs. Fortin to retain the complainant later if she ever decided to seek commutation. Upon consideration of the findings and evidence we cannot say that the decision of the trial justice was clearly wrong. In our judgment, such a promise of a mere possible future retainer in a matter of this kind is too indefinite and uncertain to support the present existence of the relationship necessary for the creation of an attorney's lien under the statute.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*George E. McCarthy,* for complainant.
*William S. Flynn,* for respondents.